UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KERRY COLLINS,             ]
                           ]
    Plaintiff(s),          ]
                           ]
vs.                        ] CV-04-CO-00583-S
                           ]
NORFOLK SOUTHERN CORPORATION, ]
                           ]
    Defendant(s).          ]

MEMORANDUM OF OPINION

The plaintiff in this action, Kerry Collins, is an African American male who has been employed by defendant Norfolk Southern Railway ("Norfolk Southern") since June 1996. Collins brought this action under 42 U.S.C. § 1981, claiming that, because of his race, he has been subjected to a hostile work environment; discrimination in discipline and investigation; and a failure to promote at Norfolk Southern. The cause is presently before the court for consideration of Norfolk Southern's motion for summary judgment, filed August 8, 2005 (Doc. 53). The plaintiff did not respond to the motion for summary judgment in the manner required by the Initial Order (Doc. 5), nor did he respond to the motion in any other form. Accordingly, the Court

has relied on the parties' agreed statement of facts in the Joint Status Report (Doc. 50); the defendant's Statement of Facts in Support of Summary Judgment (Doc. 56), which the Initial Order provides will be deemed admitted for summary judgment purposes unless controverted by the party opposing summary judgment; and the defendant's evidentiary submission (Doc. 55).  In addition, the Court has considered Plaintiff's summary of his arguments in the Joint Status Report.  (Doc. 50, pp. 7-12.)

I.   Standard of Review.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by

showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

II. Discussion.

Plaintiff did not file an EEOC charge and is proceeding solely under Section 1981. In a Section 1981 case, the plaintiff bears the burden of proving that the employer intentionally discriminated against him because

of his race. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459 (1975); *Cooper v. Southern Co.*, 390 F.3d 695, 723 (11th Cir. 2004). To establish a prima facie case of intentional discrimination using circumstantial evidence, plaintiffs may use the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id. at 723-24.*

    A.    Failure to Promote.

The plaintiff claims he was not promoted to the position of yardmaster in January 2001 for racially discriminatory reasons. The defendant argues that plaintiff cannot establish a prima facie case as to this claim because he cannot show he was qualified for the yardmaster position and he cannot show that any similarly situated white employee was given more favorable treatment. Alternatively, the defendant argues that it had a legitimate, nondiscriminatory reason for denying Plaintiff the promotion which Plaintiff cannot show is pretextual.

To establish a prima facie case of discrimination in promotion, the plaintiff must demonstrate that (1) he is a member of a protected class; (2) he applied for and was qualified for the position; (3) he was denied a

promotion; and (4) a similarly situated white employee received a promotion. *Cooper*, 390 F.3d at 742.

According to Defendant's undisputed statement of facts, which is supported by citations to the evidentiary record, the plaintiff and other candidates for the 2001 yardmaster position took a standardized test and plaintiff was not found to be a viable candidate for the position because his scores were the lowest of the group. (Doc. 56, ¶¶ 190 – 221.) It is also undisputed that a test was given to every person who has trained as yardmaster since January 1997. *Id.*, ¶ 221.

In his position statement in the Joint Status Report, the plaintiff contends the test does not reflect qualifications for the job, and he was told a 1997 provision allowed Brian Womble to "go up" without taking the test. (Doc. 50, pp. 9, 11.) Womble did not compete for the 2001 yardmaster position and there is no attempt to show that Womble was, in any respect, similarly situated to the plaintiff. *Id.*; Plaintiff's Dep., p. 100. Plaintiff's personal opinion that he is qualified despite his test scores is insufficient to establish a prima facie case. *Holifield*, 115 F.3d at 1564.

There being no dispute of material fact, the defendant is entitled to summary judgment on Plaintiff's "failure to promote" claim.

B.   Discrimination in Discipline and "Investigation."

The plaintiff did not elaborate on the underlying factual basis for his claim of discrimination in discipline and "investigation" in the Joint Status Report.  In his complaint, he contended he was subjected to disciplinary action in January 2003 for failing to do a proper engine inspection. (Complaint, p. 5.)  He also contended he was subjected to disciplinary action in March 2003 for failing to wear safety glasses on the job.  *Id*. Plaintiff claimed he was suspended without pay for 25 days in May 2003 for sleeping while on the job. *Id*. at p. 6.  He also claimed he was charged with regard to a "handbrake issue that occurred on February 17, 2003." *Id*.  The defendant argues it is entitled to summary judgment on these claims because there is no evidence that similarly situated white employees were treated more favorably.

To establish a prima facie case of discriminatory disciplinary action, the plaintiff must show:  "(1) the plaintiff is a member of a protected class; (2) the plaintiff has engaged--either (a) disputedly or (b) admittedly--in

misconduct similar to persons outside the protected class; and (3) that similarly situated, nonminority employees (that is, persons outside the protected class) received more favorable treatment." *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 n. 6 (11th Cir. 1998); modified on different grounds and rehearing denied, 151 F.3d 1321 (1998); rehearing en banc denied, 162 F.3d 1175 (1998).  A plaintiff cannot make out a prima facie case by showing just that he belongs to a protected class and that he did not violate his employer's work rule. *Id*.  "The plaintiff must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better." *Id*.

With respect to the January 2003 claim, the defendant points to undisputed statements of fact, supported by evidence, showing that Plaintiff was disciplined after an investigation of a September 9, 2002, side-swipe accident revealed that Plaintiff did not know whether a parking brake was set because he had not inspected the locomotive.  Plaintiff has not presented any evidence of a similarly situated white employee who was treated differently, and in the Joint Status Report, Plaintiff admitted there

is no white employee who got less discipline than he did or who was otherwise treated more favorably regarding the collision of two trains. (Doc. 50, ¶ 15; Doc. 56, ¶¶ 54-71.)

With respect to the March 2003 discipline, Defendant points to undisputed facts, supported by evidence, that the comparators identified by Plaintiff were also disciplined for failure to wear safety glasses. One comparator, like plaintiff, was given a letter of reprimand and the other was disciplined more severely - receiving 10 days suspension. (Doc. 56, ¶¶ 75-83.) Although Plaintiff testified that a co-employee left an engine unattended without the handbrakes on, he did not point to any evidence of the incident and he did not point to anyone who applied a handbrake to a car while standing on the ground. *Id.*

With respect to the May 2003 discipline for sleeping on the job, Defendant pointed to undisputed facts, supported by evidence, that Plaintiff filed a grievance but the suspension was upheld. (Doc. 56, ¶¶ 99-108.) Plaintiff has not pointed to any evidence of a white co-employee who was treated more favorably when caught sleeping on the job.

There being no evidence that Plaintiff was disciplined more harshly than similarly situated employees outside the protected class, Defendant is entitled to summary judgment as to Plaintiff's claim of discriminatory discipline.

C.  Hostile Work Environment.

In his complaint, Plaintiff claimed that the promotion and discipline incidents evidenced the racially hostile work environment at Norfolk Southern. Plaintiff also complained that the Norfolk Southern work environment was hostile because: (1) "[during] the period of May 2000 and January 2002, Plaintiff got put back to being a locomotive engineer and Plaintiff was out of Nichols' supervision";[1] (2) on January 8, 2002, T. W. Dugger interrupted a job briefing to tell Plaintiff "to put the crane up now" because he (Dugger) was "tired, hungry and wanted to go home," and as he walked away, Dugger referred to a white employee as a "smart S.O.B."; (3) on August 11, 2002, while Plaintiff was working on a train "in emergency," T. W. Dugger and D. Swindle arrived and gave Plaintiff instruction while they

---

[1] In the Joint Status Report, Plaintiff contended that, in late 2000, he was "put back on the ground as a conductor" after 1 ½ years as a locomotive engineer. (Doc. 50, p. 11.)

"walked the train"; (4) on October 3, 2002, T. W. Dugger stood on a switch with both feet and said "don't you do this - we got to have the track"; (5) on February 17, 2003, C. E. Leonard "snatched up Plaintiff's pants leg and put a dollar bill beside Plaintiff's boots";[2] (6) on May 19, 2003, during a break in the hearing on Plaintiff's sleeping violation, Steve Nichols said to Plaintiff, "tell you what big boy, you can play that game, so can we" and Jimmy Strickland said "I know what you are going through"; and (7) Nichols refused to pay Plaintiff for attendance at Norman Jones' hearing but paid another employee, Dennis Farley, for attendance at the same hearing.[3] In the statement of his claims included in the Joint Status Report, Plaintiff contends that he was harassed, intimidated, and subjected to racial slurs when he began questioning his supervisors about the yardmaster promotion in 2002 and that he has applied for the "engineers extra board" but has not been put on. (Doc. 50, p. 12.)

---

[2] According to Defendant, during a routine inspection, the standard 6 inch length of a dollar bill was used to determine if Plaintiffs boots were regulation height.

[3] According to Defendant, Nichols believed Plaintiff was not entitled to payment for attending the hearing because he was on suspension, but Plaintiff was, ultimately, paid for his attendance.

As discussed above, there is no evidence that the promotion and discipline incidents were racially motivated. Similarly, there is no obvious relationship between the incidents set out in the Complaint and the Joint Status Report, as Plaintiff described them, and Plaintiff's race. Plaintiff did not personally hear any overtly racial slurs, and admitted he heard only the "big boy" and the "tired, hungry, and ready to go home" comments, which he subjectively perceived to be racial slurs. (Doc. 50, ¶¶ 37-43.) There is a lack of contextual evidence to give Plaintiff's subjective impression any objective support that these comments were racial slurs. Plaintiff described racial graffiti on an African American Railroad Month sign and a Conrail train, but he did not know who was responsible and the company obliterated the graffiti when it was reported. *Id.*

A hostile work environment claim requires proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). To establish a claim based on a hostile work environment, a plaintiff has the burden of showing:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc). "[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee . . . does not sufficiently affect the conditions of employment. . . ." *Harris*, 510 U.S. at 21.

The evidence does not show that Plaintiff was subjected to any racial harassment or slurs. Although he testified that he subjectively viewed the discipline, promotion decisions, and stray workplace remarks to be racially motivated, he has utterly failed to present any objective evidence to support his belief. Additionally, he has failed to connect any alteration of the terms and conditions of his employment to racial animus. There being no question of material fact on this issue, the defendant's motion for

summary judgment will be granted as to the hostile work environment claim.

III.   Conclusion.

For the reasons set forth herein, Defendant's motion for summary judgment will be granted in its entirety.  A separate order will be entered.

Done this <u>7th</u> day of <u>December 2005</u>.

L. SCOTT COOGLER<br>
UNITED STATES DISTRICT JUDGE<br>
124153